UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL MARTINEZ-PINEDA, an individual, and AIA ALTAIBA, an individual,<br><br>　　　　Plaintiffs,<br><br>　　　　v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　Defendant. | No. 5:17-cv-02256-WDK-SP<br><br>**POST-TRIAL FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

I.      BACKGROUND

In February 2020, the Court conducted a bench trial (hereinafter "initial bench trial") involving claims brought by Miguel Martinez-Pineda and his wife Aia Altaiba ("Plaintiffs") against the United States of America ("Defendant") under the Federal Tort Claim Act (FTCA). Upon review, on December 22, 2022, the Ninth Circuit remanded the case and instructed the Court to conduct "limited fact-finding to determine Martinez-Pineda's pre-injury life expectancy and to recalculate damages for loss of consortium." Memorandum at 10, ECF No. 266. To that end, the Court held a further bench trial (hereinafter "further bench trial") on February 22-23, 2024.

Upon remand by the Ninth Circuit, this Court issued a minute order soliciting input from the parties as to what medical specialties would be relevant to completing the analysis of Plaintiff Martinez-Pineda's pre-injury life expectancy, and to "[i]dentify what medical expert(s) the parties would propose to call at a hearing (e.g., cardiologist, etc.)." ECF No. 272. The parties both elected to call cardiologists, namely, Dr. Matthew Budoff on behalf of the plaintiffs, and Dr. Jay Schapira on behalf of the defense, both well-qualified experts in the field of cardiology.

During the further bench trial, Dr. Budoff took the position that Plaintiff Martinez-Pineda's life expectancy would not be reduced by his ankylosing spondylitis (hereinafter "AS"), and stated that "[a]lthough that condition could increase potential for cardiovascular disease and mortality, this could be fully mitigated by Mr. Martinez-Pineda treating the resultant atherosclerosis." Budoff Declaration at ¶ 9, ECF No. 302. Dr. Budoff concluded that Plaintiff Martinez-Pineda's pre-accident life expectancy would be 45.6 years. *Id.* at ¶ 8.

Dr. Schapira took the view that Plaintiff Martinez-Pineda would not have a normal life expectancy due to his severe AS and associated cardiovascular complications, and estimated his pre-accidence life expectancy would be between 15-25 years. Schapira Declaration at ¶ 23, ECF No. 300.

1

### A.     Federal Rules of Evidence, Rule 403.

On March 8, 2024, plaintiffs filed their Opposition to Defendant's Attempt to Introduce Evidence of Post-Accident Health Conditions and argued that Rule 403 precludes the introduction of post-accident health conditions to determine Plaintiff Martinez-Pineda's pre-accident life expectancy. ECF No. 331 citing Federal Rules of Evidence, Rule 403.

Pursuant to Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, [or] misleading the jury . . ." In weighing the considerations of Rule 403, "[d]istrict courts have broad discretion to balance probative value against possible prejudice." *United States v. Bermudez,* 529 F.3d 158, 161 (2nd Cir. 2008)

There are two components of the Court's analysis under Rule 403. First, whether the consideration of post-injury medical conditions to determine pre-accident life expectancy constitutes unfair prejudice, confusion of the issues, and misleading the jury (finder of fact in this case), and second, if the failure by the defense to include specific testimony by Dr. Schapira on direct examination results in unfair prejudice to the plaintiffs and confusion of the issues.

#### i)     Post-Injury Medical Complications.

The Court finds that Plaintiff Martinez-Pineda's post-accident medical conditions are inextricably intertwined with the acute trauma and catastrophic injuries resulting from the motor vehicle accident that rendered him a quadriplegic. Because post-injury evidence of any pre-existing medical conditions cannot be conclusively isolated from the medical complications Plaintiff Martinez-Pineda suffered as a result of the accident, the risk of prejudice, confusion of the issues, and misleading the finder of fact by admitting such evidence to determine pre-injury life expectancy is substantially outweighed by its probative value. Accordingly, the Court finds that evidence of Plaintiff Martinez-Pineda's post-accident medical conditions is inadmissible to determine his pre-accident

life expectancy under Rule 403. *See* Fed. R. Evid. 403.

ii)  **Dr. Schapira's Cross-Examination Testimony.**

An additional basis for the exclusion of evidence of post-accident medical conditions is the failure of the defense to include certain evidence in Dr. Schapira's declaration on direct examination.[1] While the Court recognizes Dr. Schapira's extensive knowledge and expertise, he failed to identify evidence in his declaration that he subsequently used to support his conclusions for Plaintiff Martinez-Pineda's reduced pre-injury life expectancy. Specifically, Dr. Schapira failed to mention the following evidence in his declaration: 1) aortitis, 2) dyssynchrony, 3) post-accident cardiomegaly, and 4) heart attack.[2] *See* Schapira Declaration, ECF No. 300. Further, although Dr. Schapira did not identify this key evidence on direct, he did identify other specific causes of plaintiff's reduced life expectancy such as: 1) advanced AS, 2) abdominal aortic calcifications, and 3) atherosclerosis.

The defense retained one expert witness, Dr. Schapira, for the sole purpose of providing testimony to address the only remaining issue of pre-accident life expectancy, yet failed to mention critical supportive evidence until his testimony on cross-examination. Moreover, the defense did so with the knowledge that the plaintiffs would rely on Dr. Schapira's declaration being complete in determining discovery and in the preparation of their case for trial.

iii)  **Discovery Not Precluded by Court.**

To explain these inconsistencies and omissions, the defense claimed that because the declarations of Drs. Schapira and Budoff were filed simultaneously, the government did not have the opportunity to address Dr. Budoff's opinions until during cross-

---

[1] The Court and the parties agreed that the expert cardiologists would present their direct testimony via declarations subject to cross-examination during the further bench trial. *See* Doc. Nos. 297, 301, 303.

[2] Although Dr. Schapira may have mentioned these conditions in his declaration generally, he did not discuss them specifically as they pertained to Plaintiff Martinez-Pineda.

3

examination. The Court does not find this justification persuasive and observes that, contrary to the assertions by both the government and the plaintiffs, the Court did not preclude further discovery at any point. In fact, in its August 4, 2023 minute order, the Court explicitly stated:

> The Court will reopen to permit each party to call one additional medical expert. The parties are to identify the proposed experts and their medical specialties. *Appropriate further discovery will be permitted.* ECF No. 291 (emphasis added).

Accordingly, and on this additional basis, the Court finds the probative value of Dr. Schapira's testimony on cross-examination as to Plaintiff Martinez-Pineda's post-accident medical conditions is substantially outweighed by unfair prejudice to the plaintiffs and the potential for confusion of the issues.

### iv) Context of Limited Review.

Finally, within the context of the Ninth Circuit's instruction to conduct "limited fact-finding," the Court finds the consideration of post-accident medical evidence to be beyond the contemplated purpose and scope of review.

### B. Conclusion: Excluded Evidence.

In accordance with the above, all references to plaintiff Martinez-Pineda's post-accident medical conditions are excluded by the Court including any evidence of the following: 1) aortitis, 2) dyssynchrony, 3) post-accident cardiomegaly, and 4) heart attack.

## II. FINDINGS OF FACT

1. At the time of the accident on August 29, 2014, Plaintiff Miguel Martinez-Pineda was 32.8 years old. Trial Declaration of Jay Schapira ("Shapira Decl."), ECF No. 300 at ¶ 13; Trial Declaration of Matthew Jay Budoff ("Budoff Decl."), ECF No. 302 at ¶ 6; Supplemental Trial Declaration of Lawrence Stuart Miller, M.D. ("Suppl. Miller Decl."), ECF No. 278 at ¶ 6.

4

### A. Ankylosing Spondylitis Affects the Musculoskeletal and Cardiovascular Systems.

2. Ankylosing spondylitis is a chronic, inflammatory autoimmune disease. Shapira Decl. ¶ 16; Amended Trial Declaration of Michael E. Gold, M.D. ("Gold Decl."), ECF No. 104-1 at ¶ 31; Suppl. Miller Decl., ECF No. 278 at ¶ 7.

3. Frequently, ankylosing spondylitis advances silently without symptoms, particularly in young people. 2/22/24 Trial Tr., ECF No. 333 at 44:15-16 (Schapira).

4. Ankylosing spondylitis typically first attacks the sacroiliac joints and the lower spine, ultimately affecting the entire spine. Gold Decl., ECF No. 104-1 at ¶ 31. *See also* Suppl. Miller Decl., ECF No. 278 at ¶ 7. As a result of the disease, the body attacks the bones of the spine and pelvis, the "spondylitis." It also causes "ankylosis," or the fusing together of the bones of the spine, resulting in permanent rigid straightening of the spine. Supplemental Trial Declaration of Michael E. Gold, M.D. ("Suppl. Gold Decl."), ECF No. 279 at ¶ 14.

5. In addition to affecting the joints and spine, ankylosing spondylitis affects the cardiovascular system. Ankylosing spondylitis is associated with an increased risk of cardiovascular disease. Gold Decl., ECF No. 104-1 at ¶ 34. It can increase a person's risk of heart attack and stroke. Suppl. Miller Decl., ECF No. 278 at ¶ 8.

6. People with severe ankylosing spondylitis have worse cardiovascular outcomes. 2/22/24 Trial Tr., ECF No. 333 at 32:18-33:2 (Budoff); Schapira Decl., ECF No. 300 at ¶ 16. The most common cause of death in individuals with ankylosing spondylitis is cardiovascular. 2/22/24 Trial Tr., ECF No. 333 at 43:7-44:33 (Schapira), 92:20-22 (Schapira).

7. Chronic inflammation caused by ankylosing spondylitis affects the cardiac valves, heart, and the lining of the arteries throughout the body. Shapira Decl. ¶ 16. Arterial inflammation causes accelerated atherosclerosis (plaque buildup which blocks blood flow in arteries). Shapira Decl. ¶ 16.

8. Abdominal aortic calcification due to atherosclerosis is a complication of

ankylosing spondylitis. 2/22/24 Trial Tr., ECF No. 333 at 34:1-5 (Budoff); Suppl. Gold Decl., ECF No. 279 at ¶ 14. Calcification takes years to develop. 2/22/24 Trial Tr., ECF No. 333 at 145:11-13 (Schapira).

> **B.    Plaintiff Martinez-Pineda Has Severe and Advanced Ankylosing Spondylitis That Existed Prior to the Accident.**

9. Plaintiff Martinez-Pineda's ankylosing spondylitis was undiagnosed, untreated, and silent at the time of the accident. Suppl. Gold Decl., ECF No. 279 at ¶ 15; Second Suppl. Gold Decl., ECF No. 282 at ¶ 9; Schapira Decl., ECF No. 300 at ¶ 14.

10. Plaintiff Martinez-Pineda's ankylosing spondylitis existed prior to the accident. 2/10/20 Trial Tr., ECF No. 258 at 59:6-11 (Miller); Suppl. Gold Decl., ECF No. 279 at ¶ 16; Schapira Decl., ECF No. 300 at ¶ 14.

11. Plaintiff Martinez-Pineda's ankylosing spondylitis was diagnosed based on imaging studies, the location of the disease, his examination, and severe involvement of the sacroiliac joints and spine. Gold Decl., ECF No. 104-1 at ¶ 33.

12. The radiology report of an August 29, 2014 CT scan of Plaintiff Martinez-Pineda's lumbar spine reported "multilevel anterior bridging osteophytes, *moderate to severe* facet hypertrophic changes with a spondylosis-like appearance and near fusion of the bilateral sacroiliac joints, . . . suggestive of ankylosing spondylitis . . . ." Ex. 154-1309 (emphasis added).

13. These findings are unusual in a person of Plaintiff Martinez-Pineda's age and reflect the severity of his ankylosing spondylitis. 2/22/24 Trial Tr., ECF No. 333 at 50:22-51:2 (Schapira); Ex. 154-1309.

14. The physician report of the same August 29, 2014 CT scan of Plaintiff Martinez-Pineda's lumbar spine states, "CT of the L spine shows . . . evidence of likely ankylosing spondylitis *throughout* his [cervical], [thoracic] and [lumbar] spine." Ex. 154-900 (emphasis added).

15. On August 30, 2014 and August 31, 2014, Plaintiff Martinez-Pineda tested positive for HLA B*27. Exs. 154-1427, 154-1428.

16. HLA B*27 is a genetic mutation that is found in patients with more aggressive forms of ankylosing spondylitis. 2/22/24 Trial Tr., ECF No. 333 at 48:6-12 (Schapira).

17. The positive HLA B*27 test confirmed that Plaintiff Martinez-Pineda's genetic predisposition to ankylosing spondylitis since birth. Suppl. Gold Decl., ECF No. 279 at ¶ 16; 2/22/24 Trial Tr., ECF No. 333 at 44:10-13 (Schapira).

18. Testing positive for HLA B*27 is associated with more aggressive forms of ankylosing spondylitis. 2/22/24 Trial Tr., ECF No. 333 at 48:6-12 (Schapira), 92:23-25 (Schapira).

19. Based on Plaintiff Martinez-Pineda's medical records and medical imaging, his ankylosing spondylitis was severe and advanced at the time of the accident. Suppl. Gold Decl., ECF No. 279 at ¶ 17, Schapira Decl., ECF No. 300 at ¶ 14; 2/23/24 Trial Tr., ECF No. 334 at 193:24-194:2 (Schapira).

20. Based on the advanced presentation of ankylosing spondylitis at the time of treatment post-accident, ankylosing spondylitis likely began to affect Plaintiff Martinez-Pineda approximately ten years prior to its discovery in August 2014. Suppl. Gold Decl., ECF No. 279 at ¶ 20; Schapira Decl., ECF No. 300 at ¶ 15.

21. Ankylosing spondylitis can increase the potential for cardiovascular disease and mortality. Amended Trial Declaration of Lawrence Stuart Miller, M.D. ("Miller Decl."), ECF No. 146 at ¶ 29.

22. Plaintiff Martinez-Pineda had abdominal aortic calcifications at the time of the accident. Suppl. Gold Decl., ECF No. 279 at ¶ 14; Schapira Decl., ECF No. 300 at ¶ 19; 2/22/24 Trial Tr., ECF No. 333 at 34:6-9 (Budoff); 2/7/20 Trial Tr., ECF No. 256 at 160:2-4 (Gold); 2/10/20 Trial Tr., ECF No. 258 at 62:3-6 (Miller); Ex. 140; Ex. 155-1146.

C.     **Medical Literature.**[3]

23.    The Court received testimony and evidence regarding medical literature on increased mortality in patients with ankylosing spondylitis and its associated cardiovascular complications.

24.    A 2014 study (Bakland, et al.) found that, "[m]ortality is increased in patients with AS and circulatory disease is the most frequent cause of death. Parameters reflecting the duration and intensity of inflammation are associated with reduced survival. These results indicate that, to improve long-term survival in AS, there is a need for early detection and anti-inflammatory treatment as well as a vigilant approach for cardiovascular risk factors." *See* Bakland, et al., study referenced in Suppl. Gold Decl., ECF No. 279 at ¶ 30; *see also* Second Suppl. Gold Decl., ECF No. 282 at ¶ 15.

25.    In a 2015 study (Haroon, et al.), "patients with AS had a significantly higher risk for vascular death than comparators without AS. These results remained significant after multiple other baseline factors were also controlled for, including drug therapy in a subset of patients. Use of NSAIDs and statins was associated with a decreased risk for vascular mortality. . . In conclusion, our results suggest that AS is a significant risk factor for vascular mortality. Studies are needed on the effect of therapeutic interventions and optimal control of inflammation in preventing the enhanced vascular mortality in patients with AS. On the basis of our findings, a comprehensive strategy should be developed to screen and treat modifiable risk factors for vascular disease in patients with AS."[4] Defense Ex. 144 at 5, 6-7.

26.    A 2023 study (Chaudhary, et al.) concluded that, "[i]n AS, we found a

---

[3] Both Drs. Gold and Schapira arrived at their opinions regarding Plaintiff Martinez-Pineda's pre-accident life expectancy after considering medical literature on increased mortality due to ankylosing spondylitis and its associated cardiovascular complications.

[4] The Haroon, et al., study was considered by Drs. Budoff, Schapira, Miller, and Gold in arriving at their opinions regarding Plaintiff Martinez-Pineda's pre-accident life expectancy.

higher risk of death from . . . cardiovascular causes . . . compared to the general population. . . This systematic review and meta-analysis showed a significantly increased risk of overall mortality in AS . . . Cardiovascular-specific mortality was higher for . . . AS, which emphasizes the importance of early screening and management of cardiovascular risk factors." *See* Chaudhary, et al., study referenced in Second Suppl. Gold Decl., ECF No. 282 at ¶ 4.

27. A 2021 study (Leow, et al.) reported that, "people with any or more advanced AAC had higher risk of cardiovascular events . . . fatal cardiovascular events . . . and all-cause mortality." *See* Leow, et al., study referenced in Suppl. Gold Decl., ECF No. 279 at ¶ 28.

**D. Treatment of Cardiovascular Complications of Ankylosing Spondylitis.**

28. Plaintiff Miguel Martinez-Pineda did not have any medical care in the five years prior to the accident. Joint Report, ECF No. 293; 2/22/24 Trial Tr., ECF No. 333 at 32:12-14 (Budoff).

29. Although some risk factors associated with ankylosing spondylitis can be mitigated with preventative treatment, the risk factors for premature mortality cannot be eliminated. Gold Decl., ECF No. 104-1 at ¶ 40; Second Suppl. Gold Decl., ECF No. 282 at ¶ 8; 2/22/24 Trial Tr., ECF No. 333 at 88:8-89:9 (Schapira), 89:23-91:8 (Schapira).

30. Delay in diagnosis and treatment of ankylosing spondylitis and its cardiovascular complications worsens a person's prognosis. 2/22/24 Trial Tr., ECF No. 333 at 103:6-104:16 (Schapira).

31. Tissue necrosis factor inhibitor (TNFI) drugs have been used to treat patients for decades. Second Suppl. Gold Decl., ECF No. 282 at ¶ 7.

32. TNFI drugs only treat the inflammatory arthritic (musculoskeletal) part of ankylosing spondylitis. Second Suppl. Gold Decl., ECF No. 282 at ¶¶ 7-8; 2/22/24 Trial Tr., ECF No. 333 at 91:11-7 (Schapira).

33. TNFI drugs do not treat the cardiovascular complications of ankylosing spondylitis, they do not reduce inflammation in the wall of aorta, and they do not

eliminate scar tissue that can build up in the wall of the aorta due to prolonged inflammation. 2/22/24 Trial Tr., ECF No. 333 at 37:16-18 (Budoff), 90:16-23 (Schapira), 92:7-11 (Schapira), 37:19-21 (Budoff), 37:22-24 (Budoff).

34. Non-steroidal anti-inflammatory drugs (NSAIDs) have been available for over four decades. Second Suppl. Gold Decl., ECF No. 282 at ¶ 7.

35. NSAIDs do not address inflammation of the aorta wall. 2/22/24 Trial Tr., ECF No. 333 at 37:25-38:6. NSAIDs do not reduce or treat scar tissue that may develop in the aorta wall due to prolonged inflammation. 2/22/24 Trial Tr., ECF No. 333 at 38:7-10 (Budoff).

36. Blood pressure medications do not reduce inflammation in the wall of the aorta. 2/22/24 Trial Tr., ECF No. 333 at 38:22-25 (Budoff). They also do not treat scar tissue that is built up in the wall of the aorta, and they do not prevent further inflammation in the wall of the aorta. 2/22/24 Trial Tr., ECF No. 333 at 39:1-6 (Budoff).

37. Untreated atherosclerosis shortens life expectancy. 2/23/24 Trial Tr., ECF No. 234 at 213:11-15 (Budoff).

38. Statin drugs have some effect on removing plaque caused by atherosclerosis, but will not completely reverse the effects of atherosclerosis. 2/22/24 Trial Tr., ECF No. 333 at 70:16-21 (Schapira), 71:1-5 (Schapira); 2/23/24 Trial Tr., ECF No. 234 at 218:2-10 (Schapira), 223:1-15 (Schapira).

E. **Life Expectancy Findings by Expert Witnesses.**

39. Dr. Gold concluded that Plaintiff Martinez-Pineda's pre-accident life expectancy is no more than 22 years from the date of the accident.[5] Suppl. Gold Decl., ECF No. 279 at ¶ 21.

40. Dr. Miller concluded that Plaintiff Martinez-Pineda's pre-accident life expectancy is the same as the general public which is 45.6 years from the date of the

---

[5] Following the remand by the Ninth Circuit and in light of the new focus, Drs. Gold and Miller submitted supplemental declarations regarding pre-accident life expectancy. *See* ECF Nos. 279, 278.

10

1 accident.[6] Suppl. Miller Decl., ECF No. 278 at ¶ 6.

2     41.   Dr. Schapira concluded that Plaintiff Martinez-Pineda's pre-accident life expectancy is 15 to 25 years from the date of the accident. Schapira Decl., ECF No. 300 at ¶ 23. Dr. Schapira identified the risk factors for developing cardiovascular complications of ankylosing spondylitis, such as atherosclerosis. Schapira Decl., ECF No. 300 at ¶¶ 16, 20-23. Dr. Schapira testified that Plaintiff Martinez-Pineda was at increased risk of cardiovascular complications due to ankylosing spondylitis. 2/22/24 Trial Tr., ECF No. 333 at 83:2-14 (Schapira).

    42.   Dr. Schapira explained that his opinion is expressed as a range based on assumptions regarding the eventual diagnosis and treatment of ankylosing spondylitis and its cardiovascular complications, and the effectiveness of treatment to some degree. Schapira Decl., ECF No. 300 at ¶ 23.

    43.   Dr. Budoff stated that Plaintiff Martinez-Pineda's pre-accident life expectancy is the same as the general public which is 45.6 years from the date of the accident.[7] Budoff Decl., ECF No. 302 at ¶ 9. Dr. Budoff explained that the risk of ankylosing spondylitis and abdominal aortic calcifications on life expectancy are due to atherosclerosis, which are easily treated with lifestyle, cholesterol and blood pressure medications as needed. Budoff Decl., ECF 302 at ¶ 9.

    44.   During cross-examination, Dr. Budoff admitted a 10% reduction in life expectancy due to atherosclerosis, thus reducing Plaintiff Martinez-Pineda's pre-accident

---

[6] Plaintiffs' Proposed Findings of Fact and Conclusions of Law state that the average life expectancy of a 32.8 year-old Hispanic male would have been an additional 48.8 years. *See* ECF No. 336 at ¶ 17. This number is based upon the United States Life Tables, published by the U.S. Department of Health and Human Services (2014), and cited by Dr. Schapira. *Id.* citing Schapira Decl., ECF No. 300 at ¶ 18; *see also* Defense Ex. 139. This number is inconsistent with the average life expectancy used by Drs. Miller and Budoff based upon the Actuarial Life Tables of the Social Security Administration. *See* ECF Nos. 302 at ¶ 8 (Budoff) and 278 at ¶ 6 (Miller). The Court will use the number stated by Dr. Schapira of 48.8 years.

[7] Again, the Court will use the number stated by Dr. Schapira of 48.8 years. Schapira Decl., ECF No. 300 at ¶ 18; *see also* Defense Ex. 139.

11

life expectancy by 8.16 years.[8] 2/23/24 Trial Tr., ECF No. 334 at 235:19-236:8 (Budoff).

### F. Life Expectancy Findings by the Court.

45. The United States Life Tables, published by the U.S. Department of Health and Human Services (2014) examined the average life expectancy of Hispanic males. An average 32.8-year-old Hispanic male (Mr. Martinez-Pineda's age at the time of the accident) would have an average life expectancy of an additional 48.8 years. Those Hispanic males with cardiovascular disease and known disease states would have a reduced life expectancy below the average. Schapira Decl., ECF No. 300 at ¶ 18; *see also* Defense Ex. 139.

46. Dr. Schapira explained, "[t]he magnitude of life expectancy reduction would be determined by a patient's morbidity.[9] In the instance of Mr. Martinez-Pineda, we know the following basic facts about his health from his medical records at the time of the August 29, 2014 motor vehicle accident: (1) Gender – male; (2) Ethnicity – Hispanic; (3) Undiagnosed seropositive (HLA-B27) Chronic ankylosing spondylitis; . . . and (4) Atherosclerosis manifested by aortic calcification." Schapira Decl., ECF No. 300 at ¶ 19.

47. The Court received substantial testimony and evidence regarding ankylosing spondylitis and its associated cardiovascular complications and the nature and extent of Plaintiff Martinez-Pineda's ankylosing spondylitis.

48. Based on the testimony and evidence regarding ankylosing spondylitis and its associated cardiovascular complications, medical literature on increased mortality in patients with ankylosing spondylitis and its cardiovascular complications, and the nature and extent of Plaintiff Martinez-Pineda's ankylosing spondylitis, the Court finds that

---

[8] Dr. Budoff admitted a 10% reduction in life expectancy which he stated was 8 years during cross-examination. The Court calculates 10% of 81.6 years to be a reduction of 8.16 years.

[9] Morbidity is defined as "a diseased state or symptom: ill health." *merriam-webster.com.*

Plaintiff Martinez-Pineda had a shortened pre-accident life expectancy.

49. The Court's finding of a reduced pre-accident life expectancy is based, in part, upon the following:

    a. Plaintiff Martinez-Pineda's ankylosing spondylitis was pre-existing, undiagnosed, silent, and untreated prior to the August 29, 2014 accident.

    b. Plaintiff Martinez-Pineda's ankylosing spondylitis was severe and advanced based on August 29, 2014 imaging of his spine and joints that showed "near fusion of the bilateral sacroiliac joints" and "evidence of likely AS throughout his spine."

    c. Plaintiff Martinez-Pineda had a more aggressive form of ankylosing spondylitis that was diagnosed based on a positive blood test for HLA B*27 at the time of the accident and likely affected him approximately 10 years prior to the accident.

    d. Although some risk factors associated with ankylosing spondylitis can be mitigated with preventative treatment, the risk factors for premature mortality cannot be eliminated.

    e. Plaintiff Martinez-Pineda had abdominal aortic calcifications and calcified atherosclerosis at the time of the accident.

    f. Plaintiff Martinez-Pineda's cardiovascular system was being affected by his ankylosing spondylitis at the time of the accident in ways that shorten his life expectancy.

    g. Plaintiff Miguel Martinez-Pineda did not have any medical care in the five years prior to the accident.

    h. No evidence was presented as to when his AS would be discovered by either party despite the Court's inquiries.

    i. During cross-examination, Dr. Budoff admitted a 10% reduction in life expectancy due to atherosclerosis.

    j. Testimony and evidence regarding medical literature indicated increased mortality in patients with ankylosing spondylitis and its associated cardiovascular complications.

50. In accordance with the foregoing, the Court determines Plaintiff Martinez-Pineda's pre-accident life expectancy as follows:

  Life Expectancy Hispanic Male:  **81.6 years**[10]

  Subtract 10% (Dr. Budoff cross-examination): - **8.16** (10%) = **73.44**

  Subtract age at time of accident:  - **32.8** = **40.64**

  The Court concludes that the Defendant has the stronger evidence and therefore subtracts an additional 8 years:

    **40.64 – 8 = 32.64**[11]

51. Any finding of fact deemed to be a conclusion of law is incorporated into the conclusions of law.

### III. CONCLUSIONS OF LAW

52. "Loss of consortium" is a form of non-economic damages. Cal. Civ. Code § 1431.2(b)(2); *Honsickle v. Superior Court*, 69 Cal. App. 4th 756, 766 (Cal. Ct. App. 1999) ("Beyond question, [a] claim [for loss of consortium] consists entirely of noneconomic damages.").

53. Prospective damages may only be awarded for future loss of companionship and affection that is sufficiently certain to occur. *Boeken v. Philip Morris USA, Inc.*, 48 Cal. 4th 788, 799 (Cal. 2010).

54. Plaintiff Altaiba bears "the burden of proving by a preponderance of the evidence both the existence and the amount of damages proximately caused by the

---

[10] Schapira Decl., ECF No. 300 at ¶ 18; *see also* Defense Ex. 139.

[11] Plaintiff Martinez-Pineda's pre-accident life expectancy is 32.64 more years to the age of 65.44.

14

defendant's tortious acts or omissions." *Pulte Home Corp. v. Am. Safety Indem. Co.*, 14 Cal. App. 5th 1086, 1127-28 (Cal. Ct. App. 2017) (citation omitted); *see also* CACI 3900 ("[Y]ou must not speculate or guess in awarding damages.").

55. Comparative fault principles apply to non-economic damages. CACI 3960.

56. "In any action for personal injury . . . based upon principles of comparative fault . . . [e]ach defendant shall be liable only for the amount of non-economic damages allocated to that defendant in direct proportion to that defendant's percentage of fault . . . ."). Cal. Civ. Code § 1431.2(a).

57. California law provides that "[l]ife expectancy figures from mortality tables are admissible but are not conclusive." *Allen v. Toledo*, 109 Cal. App. 3d 415, 424 (Cal. Ct. App. 1980).

58. "All relevant factors," including health, lifestyle, and occupation, should be considered by a finder of fact in determining life expectancy. *Allen*, 109 Cal. App. 3d at 424. "[B]oth state and federal courts often leave life expectancy calculations to the trier of fact, and . . . the trier of fact is allowed to consider a wide range of factors in making its determination, including a plaintiff's 'health, habits, lifestyle, occupation, and activities.'" *Contreras v. City of Los Angeles*, 2012 WL 12893417, at *2 (C.D. Cal. Sept. 11, 2012) (internal citation omitted).

59. The United States Life Tables, published by the U.S. Department of Health and Human Services (2014) examined the average life expectancy of Hispanic males. An average 32.8-year-old Hispanic male (Mr. Martinez-Pineda's age at the time of the accident) would have an average life expectancy of an additional 48.8 years. Those Hispanic males with cardiovascular disease and known disease states would have a reduced life expectancy below the average. Schapira Decl., ECF No. 300 at ¶ 18; *see also* Defense Ex. 139.

60. The Court ordered the parties to file the direct testimony declarations of their cardiology experts by the same due date. ECF No. 297. However, the Court did not preclude further discovery at any point and specifically stated in its minute order that

"[a]ppropriate further discovery will be permitted." ECF No. 291.

61. While the Court determines that it cannot consider post-accident medical records when assessing Plaintiff Martinez-Pineda's pre-accident life expectancy pursuant to Federal Rule of Evidence 403, it finds that Plaintiff Martinez-Pineda had a shortened pre-accident life expectancy independent of those findings. *See,* supra, Rule 403 analysis.

62. The Court finds that Plaintiff Altaiba's award of damages for loss of consortium must be reduced by 15% for Plaintiff Martinez-Pineda's comparative fault.

63. The Court previously determined that Plaintiff Altaiba should be awarded $1,000 per day for loss of consortium and makes the same finding in the further bench trial. 2/20/20 Trial Tr., ECF No. 244 at 66:8-11.

64. The Court finds that Plaintiff Martinez-Pineda had a shortened pre-accident life expectancy.

65. Based on the testimony and evidence received, the Court finds that Plaintiff Martinez-Pineda's pre-accident life expectancy is 32.64 more years, to age 65.44.

66. The parties are to submit a joint proposed judgment with a calculation of the monetary amount of Plaintiff Altaiba's damages for loss of consortium after a reduction for comparative fault in accordance with the above findings within one (1) week.

67. Any conclusion of law deemed to be a finding of fact is hereby incorporated into the findings of fact.

**IT IS SO ORDERED.**

Dated: May 21, 2024

_____
Hon. William D. Keller
United States District Judge

16